IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOYCE J. SENNE,                    )
                                   )
              Plaintiff,           )
                                   )
       v.                          )     CIVIL ACTION NO. 1:09cv952-CSC
                                   )               (WO)
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
              Defendant.           )

**MEMORANDUM OPINION and ORDER**

The plaintiff, Joyce J. Senne ("Senne"), applied for disability insurance benefits

pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., alleging that she was

unable to work because of a disability.  Her application was denied at the initial

administrative level.  The plaintiff then requested and received a hearing before an

Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim.

The Appeals Council rejected a subsequent request for review.  The ALJ's decision

consequently became the final decision of the Commissioner of Social Security

(Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is

now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Pursuant

to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United

States Magistrate Judge conducting all proceedings in this case and ordering the entry of final

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

judgment.  Based on the court's review of the record in this case and the briefs of the parties,

the court concludes that the decision of the Commissioner should be reversed and this case

remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11ᵗʰ Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court

must find the Commissioner's decision conclusive if it is supported by substantial evidence.

42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11ᵗʰ Cir. 1997).  "Substantial

evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence

as a reasonable person would accept as adequate to support a conclusion."  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of

the record which support the decision of the ALJ but instead must view the record in its

entirety and take account of evidence which detracts from the evidence relied on by the ALJ.

*Hillsman v. Bowen*, 804 F.2d 1179 (11ᵗʰ Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the
> reasonableness of the [Commissioner's] . . . factual findings . . . No similar
> presumption of validity attaches to the [Commissioner's] . . . legal conclusions,
> including determination of the proper standards to be applied in evaluating
> claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11ᵗʰ Cir. 1987).

### III.  The Issues

**A.  Introduction.**  Senne was 53 years old at the time of the administrative hearing.

(R. 18).  She has an eighth grade education, and does not have a general equivalency

diploma.  (R. 19).  Following the hearing, the ALJ concluded that Senne last met the insured

---

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11ᵗʰ Cir. 1986) is a supplemental security income case (SSI).
The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately
cited as authority in Title XVI cases.  *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5ᵗʰ Cir. 1981) (Unit A).

status requirements and qualified for benefits on September 30, 2005. (R. 10). He further

concluded that she has severe impairments of "cervical degenerative disc disease; cervical

spondylosis; hypertension; osteoarthritis in hands and poor vision." (*Id.*). The ALJ

concluded that because Senne could perform a full range of light work, she could return to

her past relevant work as a quality control worker and a waitress, and thus, she was not

disabled. (R. 11 & 14).

     **B. Plaintiff's Claims.** Senne presents five issues for the Court's review. As stated

by Senne, the issues are as follows:

1. The Commissioner's decision should be reversed because the ALJ failed to properly evaluate Ms. Senne's pain.

2. The Commissioner's decision should be reversed, because the ALJ failed to issue a credibility finding in compliance with the law of the Eleventh Circuit.

3. The Commissioner's decision should be reversed because the ALJ failed to follow the "slight abnormality" standard in finding that Ms. Senne's headaches are non-severe.

4. The Commissioner's decision should be reversed, because the ALJ committed reversible error by ignoring Ms. Senne's obesity.

5. The Commissioner's decision should be reversed, because the ALJ's RFC assessment fails to consider Ms. Senne's severe impairment of poor vision.

(Doc. # 12, Pl's Br. at 7).

## IV. Discussion

The plaintiff raises several issues and arguments related to this court's ultimate

inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of the plaintiff's specific arguments because the court concludes that the ALJ erred as a matter of law. The Commissioner's regulations require that a written decision contain several elements.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphasis added).

The ALJ's written decision fails to state reasons as required by the regulations. The decision recites the evidence, states conclusions but wholly fails to provide to the parties or the court any application of the facts to the law or the regulations. It is this type of analysis which is necessary for the formulation of "reasons." For this analytical failure alone a remand is required; however, the court will address other issues which further highlight the deficiencies of the ALJ's opinion.

**A. Pain and Credibility Analyses**. During the administrative hearing, Senne testified that she suffered from severe neck and lower back pain, arthritis in her hands, and headaches. (R. 18, 21, 24, 31). The law is very well-established in this circuit. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the

alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Commissioner has, as a matter of law, accepted the testimony as true. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991)*; Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986).

Moreover, "[p]ain is clearly a non-exertional impairment that limits the range of jobs the claimant can perform." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995); *Walker*, 826 F.2d at 1003 ("Pain is a nonexertional impairment."). *See also Phillips v. Barnhart*, 357 F.3d 1232, 1242 fn 11 (11th Cir. 2004) ("Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include . . . pain limitations. . .") Furthermore, in this circuit, pain itself can be disabling. *See Foote*, 67 F.3d at 1561; *Marbury v. Sullivan*, 957 F. 2d 837, 839 (11th Cir. 1992).

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate *reasons* for doing so, or the record must be obvious as to the credibility finding. *Foote*, 67 F.3d at 1561-62; *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is,

therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

After reciting the law, the ALJ acknowledged that Senne has impairments that would reasonably be expected to produce the symptoms about which she complains but the ALJ then concluded that her testimony was not credible.  (R. 12).   In discrediting Senne's testimony, the ALJ's credibility determination, in its entirety, is as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(*Id.*).

The ALJ wholly fails to articulate any reason for discounting the plaintiff's *credibility* or *her pain testimony*.  The ALJ's determination amounts to nothing more than a recitation of the applicable law, and a conclusory finding. There is no analysis whatsoever, leaving the court to guess at the ALJ's specific reasons for discounting Senne's testimony.  While the ALJ parroted select portions of the medical evidence, he did not discuss *all* of the medical evidence.  Rote recitation of the medical evidence is not a substitute for articulating clear reasons for discrediting the plaintiff.  The facts recited by the ALJ might support reasons, but

the ALJ did not articulate those reasons.  The ALJ's conclusory credibility and pain analyses are simply deficient as a matter of law.  It is the responsibility of the ALJ to conduct the appropriate legal analysis, and his written decision must include sufficient reasoning to permit the court to determine that he has done so.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence."  *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981).  "Failure to do so requires the case be vacated and remanded for the proper consideration."  *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985).  Because the ALJ failed to conduct proper credibility and pain analyses, the court concludes that the ALJ failed to meet his burden to consider this case in accordance with applicable law, and thus, the court is unable to determine whether the ALJ's conclusion that the plaintiff is not disabled is supported by substantial evidence.

**B.  Migraine Headaches**.  Despite the medical evidence and Senne's testimony that she suffers from migraine headaches, in his determination, the ALJ simply ignores that evidence.  The ALJ makes one cursory reference to a 2001 treatment note regarding Senne's migraine headaches.  (R. 12).  However, he completely ignores other evidence that Senne has consistently sought treatment for migraines.  Her medication list includes Imitrex for migraine headaches.  (R. 144).  In April 1996, June 1997, February 1998, June 1998, May 2000, and February 2001, Senne complained to doctors that she was suffering from headaches.  (R. 195, 166, 192, 168, 193).  On February 23, 2001, she was prescribed Imitrex,

8

100 mg for her headaches.  (R. 193).  On December 3, 2001, she complained of migraine headaches with photosensitivity.[4]  (R. 167).  In December 2003 and July 2004, she was still suffering from migraine headaches.  (R. 164, 199).  The ALJ notes that a Social Security Administration reviewer opined that "the bulk of the medical evidence from Dr. William Laio disclosed that claimant was primarily treated for headache related symptoms and treatment."  (R. 12).  Although the record is replete with references to migraine headaches, the ALJ makes no findings about whether Senne's migraine headaches constitute a severe impairment.[5]  The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected."  *McDaniel*, 800 F.2d at 1031.  The medical evidence

---

[4]  This is the treatment note to which the ALJ refers in his opinion.

[5]  A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(c). The medical records clearly demonstrate that Senne suffers from headaches which meet the definition of physical or mental impairment.  However, the ALJ made no determination about whether this impairment was severe.  The step two severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel*, 800 F.2d at 1031. Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval Social Security Ruling 85-28 at 37a).

> An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a); *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir. 1997). "Basic work activities" include: physical functions such as walking, standing, sitting, lifting, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). It is a threshold inquiry where only the most trivial impairments are rejected. *Id.* "The claimant's burden at step two is mild." *Id.*

*O'Bier v. Comm'r of Social Sec. Admin.*, 338 Fed. Appx. 796 (11th Cir. 2009) (No. 08-16419).

9

plainly establishes that the claimant suffers from migraine headaches, an impairment which is not so slight or minimal that it would not interfere with the plaintiff's ability to perform basic work activities.  Consequently, while it is plain that the plaintiff suffers from migraine headaches, what is not plain is the effect of those headaches on her ability to work.  "'Even a "mild" mental impairment may "prevent [a] claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies.'" *Allen v. Sullivan*, 880 F.2d 1200, at 1202 (11th Cir. 1989).  Because the ALJ did not make any findings regarding the effects of Senne's migraine headaches on her ability to perform work, he erred as a matter of law.[6]

The ALJ then compounded his errors by failing to consider the side effects of Senne's medications on her ability to work.  Senne testified that some side effects from her medications include slurred speech and vertigo; she takes 13 pills a day.  (R. 25).  The ALJ was required to consider whether the plaintiff experiences any side effects from her medications, and if so, whether those side effects impact her ability to work.  The side effects of medication may render a claimant disabled or at least contribute to a disability.  *Cowart v. Schweiker,* 662 F.2d 731, 737 (11th Cir. 1981).  The record demonstrates that Senne has

---

[6] Even if the ALJ concludes that this impairment was not severe, he must still consider its effect on Senne's ability to perform work.  The ALJ must consider every impairment alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe - either singly *or in combination* - to create a disability.  *See Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986).  All of the plaintiff's impairments must be considered in combination, even when the impairments considered separately are not severe. *Hudson,* 755 F.2d at 785.

been prescribed the following medications: Triamterene[7]; Doxepin[8]; Ambien[9]; Lyrica[10]; Xanax[11]; Gabapentin[12]; Oxycontin[13]; Endocet[14]; Lidoderm patch[15]; Imitrex[16]; and Oxazepam.[17]  (R. 142-44).  However, the ALJ made no findings regarding the effects of these medications on Senne's ability to work, and thus, the court is unable to determine whether the ALJ's conclusion that Senne is not disabled is supported by substantial evidence.

**C. Other Issues.**  The ALJ determined that Senne suffers from the severe impairment of cervical degenerative disc disease, cervical spondylosis, hypertension, arthritis in the hands and poor vision.  (R. 10).  He also determined that she "has the residual functional capacity for the full range of light work, with mild-to-moderate postural limitations, mild to moderate manipulative limitations, and environmental limitations to avoid heights and machinery hazards."  (R. 13).  Unfortunately, the ALJ makes no more specific findings

---

[7]  Triamterene is a prescription diuretic used in the treatment of high blood pressue.

[8]  Doxepin is used to treat depression and anxiety.

[9]  Ambien is a prescription sleep aid.

[10]  Lyrica is used to treat neuropathic pain.

[11]  Xanax is used to treat panic attacks and anxiety.

[12]  Gabapentin is used to control seizures and treat pain.

[13]  Oxycontin is prescribed to treat moderate to severe pain.

[14]  Endocet is also used to treat moderate to severe pain.

[15]  Lidoderm patches are prescribed to treat neuralgic pain.

[16]  Imitrex is used for the treatment of acute migraines.

[17]  Oxazepam is used to treat anxiety.

regarding Senne's residual functional capacity.  He makes no reference to her poor vision and the court is unable to determine, from the opinion before it, whether the ALJ considered that impairment in determining Senne's residual functional capacity.  Consequently, the court is unable to determine whether the ALJ's residual functional capacity determination is supported by substantial evidence.

Although the medical records demonstrate treatment by pain management specialists, injections, and numerous complaints to doctors about back and neck pain, the ALJ took no further steps to explore the extent of the plaintiff's physical impairments by securing a physical consultative examination.  Where a consultative evaluation is needed to make an informed decision, it is error for an ALJ not to order such an evaluation.  *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984).

Finally, the ALJ determined that the plaintiff had no mental impairment because the psychological consultative examiner noted a tendency towards somatization.  "Even though the evaluation of Dr. Jacobs was performed after the date last insured, the undersigned finds that somatization was found upon testing, and therefore, claimant's (sic) has not mental impairment."  (R. 13).  The ALJ's conclusion is disingenuous as best.  The consultative examiner opined that the clinical profile obtained from the MMPI-II testing was valid.  While the ALJ has some discretion in accepting other evidence to determine the validity of test scores, the ALJ may not reject a valid testing.  *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).  More importantly, however, the ALJ culled Dr. Jacob's report for the one

12

statement that supported his position and ignored other contrary statements.  For example,

Dr. Jacob described Senne as follows.

> Mrs. Senne is utterly preoccupied with health matters endorsing a plethora of
> physical symptoms.  She also shows a strong tendency toward somatization
> with Scale 3 at T84.  This may imply that Mrs. Senne is apt to make more
> rather than less of her symptoms.  She may present symptoms or describe them
> in dramatic fashion.  Symptoms are likely to be multiple, migratory and
> magnified. This type of patient tends to be demanding, but passive dependent.
> That is to say, it is often difficult to recruit this type of patient into full
> compliance with treatment.  There is a tendency to become disaffected with the
> treating physician if they perceive that the doctor is insufficiently attentive or
> sympathic.   Having said this, there is little doubt that Mrs. Senne is
> experiencing significant pain problems.  The depression scale is elevated at T
> 82.  The D-3 factor from the Harris Lingoes subscales was elevated indicating
> that health problems are a major factor in Mrs. Senne's depression.  She also
> seems to experience anxiety mediated by pain. . . .From the foregoing
> commentary, it should be evident that psychological factors do play a role in
> the symptom picture.
>
> This was more evident on the Pain Patient Profile where Mrs. Senne was
> compared to a population of chronic pain sufferers.  Only 12 percent of the
> pain patients sampled scored as high as Mrs. Senne did on the somatization
> scale.  This would imply that her life is constricted and immobilized by
> multiply (sic) physical complaints, which occupy most of her attention.   She
> is apt to be seen by others as reactive, cynical and obsessive.  The depression
> scale was exceeded by only 20 percent of the pain patients sampled.  This
> would imply that Mrs. Senne feels lethargic, listless and detached.  She feels
> overwhelmed by problems and efforts to involve her in a participatory physical
> rehabilitation program may be hampered by her emotional state.  Mrs. Senne
> was also more anxious that the average pain patient on the P-3 although this
> difference was not significant.

(R. 235-36).

Dr. Jacobs diagnosed Senne with Pain Disorder, Major Depression, recurrent and

moderate, and generalized anxiety disorder.  (R. 236).  The medical records also demonstrate

13

that Senne has also been treated for anxiety and depression since 1996. (R. 195, 192, 167, 196, 165, 197). Despite this evidence, the ALJ concluded that Senne does not suffer from a mental impairment. Frankly, that conclusion is contrary to the evidence. It is obvious from the record before the court that the plaintiff suffers from both physical and mental impairments as well as non-exertional impairments of pain and depression. However, as a result of the ALJ's failure to properly consider the plaintiff's impairments or properly analyze the evidence, the effects of those impairments on Senne's ability to work are at this juncture unknown.

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). *See also Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000). An ALJ may not arbitrarily pick and choose facts from the medical evidence to support his conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury*, 957 F.2d at 840-841. For these reasons, the court concludes that the Commissioner erred as a matter of law, and that the case should be remanded for further proceedings regarding the severity of the plaintiff's pain, migraine headaches, depression and anxiety, and the effect of these conditions and her medication, on her ability to work.

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further

proceedings consistent with this opinion.

A separate order will be entered.

It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after she receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

A separate order will issue.

Done this 1st day of December, 2010.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

15